May it please the Court, Ross Moynihan here for... Could you keep your voice up, please? Yes, Ross Moynihan here for the appellant, Debra Haney-Williams. And I'd like to reserve five minutes at the end. The main issue that I wanted to first address, of course, subject to the Court's questions, is the issue of the phrase reasonable degree of certainty, or probably more appropriately, reasonable degree of probability. I think certainty is even more confusing to a fact finder or to an expert who's called on to give an opinion. So the Nevada law requires reasonable degree of medical probability? That's your position? Oh, well, the Nevada courts usually use reasonable degree of probability. Yeah, that's what I said. Yes, but they use both interchangeably in the cases I've seen medical probability used more often. And that goes to the admissibility of the expert's opinion? That's correct. Has Nevada adopted the substantial factor test? Yes, it has. Okay, and so Nevada, I assume, has not adopted the abandonment of the substantial factor test that's in the third restatement? That's correct. Okay. So what the reasonable degree of medical probability standard really is a court determination. Has the expert's testimony and has the expert's opinion rose to the level of reasonable degree of probability, which is a court determination? Nevada courts do not require the expert to state those words, reasonable degree of probability. In fact, in the expert's opinion, stating those words or not stating those words is irrelevant. What the district court is supposed to do is to look at the substance of the actual opinion itself and not rely on this talismanic phrase. Right, but there's this deposition transcript, two of them, in fact, and it seems to me that the parties talk right past each other and get all bollocksed up because, and let's just, I'm going to ask opposing counsel the same thing. It seems to me to be uncontested that a person taking this medication properly, that is the titrated amount, could result, one in 1,000 will have this catastrophic consequence, right? That is correct according to the pre-approval testing. That was just a yes or a no. That's not contested, is it? That is not contested. Right, so here's the point. So when we read this transcript, I just want to give you every opportunity, both of you, because this seems to me to be the crux of it. There were repeated questions to plaintiff's experts about whether they could say, basically adopting a but-for standard, but for this dosage, can you say she wouldn't have had these consequences? And they said, well, I can't say that. And it seems to me nobody could say that because one in 1,000 would have this result. What am I missing there? So that's absolutely correct. And what the evidence in the case and the medical literature proves, that when you increase the dosage and you increase the titration, so you move the drug quicker than it's supposed to be titrated and or you start at a higher dose than the initial recommended dose, you are more likely to suffer rash. And rash is a collective term that includes all the symptoms. I appreciate that. I appreciate that. And I think your experts tried valiantly to make that point, that the likelihood of this result was, in their view, with an increased dosage. Correct. But I'm just trying to get at the problem here. And it seems to me the district court was presented with this conflicting statement that your clients, sorry, experts both said. I think they said to a reasonable degree of medical certainty in their reports. But be that as it may, they took a position about the likelihood of this happening. And then it seems to me the deposition transcript is what defense counsel was relying on. And the deposition transcript really adopted a but-for test, which is, I think, not the right standard. That's Judge Bennett's point. It seems to me that the jury instruction is the 4.5 jury instruction, which is a substantial factor.  Well, is that briefed before the district court? I look back and it seems to me the district court would have been sort of in the dark about this. It absolutely was. Where? In the plaintiff's opposition summary judgment. There are so really what the Sir, I read the plaintiff's opposition to summary judgment, and I read the plaintiff's cross motion for summary judgment. And I had some sympathy with the district court here. It seemed to me to be very opaque, maybe because you both understood this and hadn't put it on paper. But it seems like you're just talking past each other in these pleadings. Quite possibly. And what the defense or the appellee focused on below was the fact that, you know, the plaintiff's experts gave the opinion that the overdose caused the symptoms and the severity of the symptoms. OK, that was clear. And what they focused on, the questions that they asked, can you state to a reasonable degree of medical certainty that had she taken the 25 milligram initial dose, she wouldn't have suffered these symptoms. And that's where everything kind of fell apart. And that's the but-for test. That's the inapplicable but-for standard, I think. That's correct. So as I understand it, Glinsky, he said two things in his declaration on the causation issue. One, that it was more likely than not that the plaintiff suffered because of the negligence. And then he went on to say that his opinion was ceded to a reasonable degree of certainty on cross-examination of the deposition. He stepped back from certainty, but he didn't step back from probability. Is that your point? That's absolutely correct. And to be more precise, if I may, what his opinion was, his opinion to a reasonable degree of certainty or probability or whatever it is, that the overdose. There's a difference, counsel. There's a difference. And the report said certainty. Both of them said certainty. So I read the record the way Judge Bea does. It appeared to be a step back. But I think your argument and your answer to Judge Bea is all they needed was medical probability. That's correct. He was successfully cross-examined out of certainty but not out of probability. Well, if you look at the Glinsky testimony. Is that a yes or a no? That's an important question. So, oh, he absolutely testified to a, well, the phrasing of the questions was certainty. But he did testify that the probability that it's more likely that when you increase the dose and you increase the titration that you're more likely to suffer symptoms and the severity of symptoms goes up depending upon how big the overdose is. Counsel. To Judge Bea's question. Probability based upon. The answer is yes. He asked you whether he was cross-examined out of the probability standard. And I think your position is yes, but I'm not sure you're really answering that question. Well, the question itself, a deposition. Judge Bea's question is the one I'm calling your attention to. The question, a deposition asked by defense was certainty. Okay. And he then testified that, well, and really the question, specific question was, he did testify that the overdose caused the symptoms. But then he was asked the certainty question was, did the, if she had taken the 25 milligrams, would she have suffered the symptoms to a reasonable degree of certainty? And he said. No, I can't. I can't say that. You can't say that. All I can say is that when you. He didn't follow up with saying all I can say, but he said, no, I can't say that. Technically, yes. But he said, but. And he wasn't asked a question. Can you also say that it didn't occur with a reasonable amount of probability? That question was not put him to deposition. That question was not asked of either a Glinski or DiCerbo. And so the answer to Judge Bea's question is yes. Yes. He wasn't cross-examined out of the probability standard. That's all we're trying to get at. A hundred percent. Judge Bennett's trying to ask a question. So I want to switch gears a little bit. Let us say hypothetically we were to agree with you that you presented in the light most favorable to the plaintiff evidence to survive the summary judgment motion. In that hypothetical is the plaintiff's view that we would have jurisdiction to consider your argument that the district court abused its discretion in not granting your Daubert motion on Benowitz. Correct. Why would we have jurisdiction? If we were already hypothetically saying we're sending this case to trial based on ground one that the district court got the standard wrong and that there was sufficient evidence. Why would we have jurisdiction to decide whether the district court abused its discretion in not striking Benowitz on Daubert grounds? Well, the district court's ruling on the Benowitz motion is really tied to the plaintiff's motion for summary judgment. And if the district court erred or abused its discretion in not striking Benowitz, that has an obvious effect on the plaintiff's motion for summary judgment, which was deemed moot by the district court below. Okay. Thank you. Good morning, Mr. Rosen. It's good to see you again. Good morning. Likewise, Jeremy Rosen, on behalf of the appellees, happy to begin answering the questions that you were asked. Counsel, unless there's a particular question you'd like me to start with. I'm just worried that we might be missing something. Has there been some ruling that we don't know about? Sometimes that happens on appeal where the lawyers forget to tell us that you all know something we don't. Has there been some ruling about the substantial factor test not being the right test in this case? No, but it was also not argued below. I mean, you know, I think this was not how I read the record as plaintiffs argued it. Certainly not how the defendants argued it. It was not how defendants argued the case below, and it's not how plaintiffs argued it. But it's the test, right? It's the applicable test, isn't it? It's the jury instruction. You know, that is not something, honestly, that I've looked into because that was not how this case was argued in the district court, and it's not how the district court wrote. Well, it's not how you're arguing it on appeal either, right? The red brief talks about this standard, reasonable degree of medical probability, and then it says that that's the applicable, her overall causation standard. It says a generalized statement that the dosage disparity caused injury does not create causation at the required degree of probability unless to a reasonable degree of medical probability. The injury would not have happened but for the incorrect dosage. You cite this quite expressly. I mean, I think it is clear that the Nevada law is a bit opaque in terms of causation in this situation. I think that there isn't a lot of law in these particular situations here. If you look at, you know, there is the testimony, as you've talked about already with counsel for the appellant, where the two experts on the plaintiff's side both testified that had the plaintiff had taken the medication with the proper doses, she may well have come down with the same injury, and that's consistent, of course, with the black box warning, which is that the excerpt of record of 363, which indicates that there's only a suggestion right now that if you take the wrong dosage, there might be, you know, a higher risk and that it's unproven. And so I think that's certainly consistent with the testimony from the defense expert, which was relied upon in granting summary judgment, who said that because the SJS is an extraordinarily rare injury and side effect as opposed to other rashes, which are very common, there is a different disease mechanism which is at play. And therefore, you can't generalize from higher doses causing that, which you might be able to say from other rashes, where you might say that the higher dose is the cause of escalation. Maybe, and it seems like that is a question that will have to go forward, that plaintiff's experts had a different view of that. But I'm trying to get at, there seems to be two different problems on causation here. One is this notion that Nevada law requires a reasonable degree of medical certainty, which I think it does not as far as I can tell. You cited a case to that point. But those cases, that goes to the admissibility of the expert opinion, according to the case that you found for us. But what you argued in the red brief is the relevant causation question is whether to the required degree of probability, she would not have had the same injuries but for taking that improperly elevated dosage. And it seems to me, and I want to give you every opportunity to seem to me that's wrong as a matter of law because of Judge Bennett's point. This is a substantial factor test. Well, but they still have to put on evidence to rebut the presumption that the defendant has shown that there is no cause of action here. What kind of presumption are you talking about? The fact that you have an expert who says what he said doesn't create a presumption. I mean, there is plenty of evidence that you have this titration for a reason because the lack of titration. The reason you have the titration is to exactly avoid the problem that the plaintiff here suffered. Right. Isn't there, regardless of the standard, you would agree that there's evidence of that, right? Well, actually, the warning itself expressly says that it is not for this particular injury. As I just read it, 363 in the excerpts of record, it specifically excludes the fact that it deals with something like SJS. It is for other types of side effects because it is not yet known whether it has anything to do with something like SJS. Well, I think perhaps we read that a little bit differently. I have a different question I want to ask with regard to the district court striking of the discerbo declaration on the sham affidavit rule. Certainly. Would you agree that the sham affidavit rule is a rule that is only germane to summary judgment? I think it has only been applied in summary judgment context. You know of no case applying the sham affidavit rule to prevent someone from testifying at trial, right? I'm not aware of any. I think it would certainly be a basis for a trial for cross-examination. Yes. So if hypothetically we viewed the declaration of Iglinski and the remaining evidence sufficient to take plaintiff to trial, then discerbo would also get to testify at trial because the sham affidavit rule would not apply and you'd get to cross-examine him, right? Yes, I believe that that is true. I'm not aware of any cases. Counsel, what's your strongest argument that the sham affidavit rule does apply here? I think the case cited in our brief, which is the Kennedy case. I understand the law. I didn't ask a good question. Forgive me. I mean factually, what factual predicate gave rise to this, what I think should have been a finding, that this was not a good faith correction or clarification? Well, I think the district court was correct to find, to apply it here because I think in deposition he clearly indicated that it would be, he could only speculate that the dosage had any cause to her injury and then he came back with a declaration that said, well, actually, I do think the dosage caused her injury. And to get back and to, you know, obviously we may end up agreeing. Would you agree with me, Mr. Rosen, that discerbo's contradiction had to do with the term certainty, not with the term probability? I think it does to an extent, but I think it, but it also comes into the meaning of what we're going to say to causation. I think that there, you know, one either is going to get the SJS or not. And I think here you're going to get SJS with certainty or probability or not at all, but probability is a midpoint. And he's contradicted himself as to certain there's no question about that. And if you're going to testify at trial, that would be a flat out contradiction. But if he testifies as to probability, there's no flat out contradiction. It's not correct. Yes, except I think what your question is, and this is where I would like to gently push back. And again, you know, I understand we may leave here still as friends, but agreeing to disagree, that there is still the requirement, though, of under for expert testimony, the medical, the degree of whether it's probability or certainty, there still has to be a reasonable degree of medical, which is, I think, the important modifier to both probability and certainty. And I think any way you slice it here. He says there's no reasonable belief of certainty. That means there's no reasonable belief of probability. I think there still has to be a reasonable medical, reasonable medical probability. And I think here the district court's order still stands because there's not a reason. Probability given the testimony where he says he says it's, quote, speculative. Right. But that is there. Right. I think that's right. I think that's that. That is fertile grounds for cross-examination if this case goes to trial. But here's the deal. When he says I would have I would be speculating or he says, I can't say that. It seems to me that's all in the context of everybody agreeing that at least one in a thousand will have this awful consequence. So he would be speculating if I think is what he means. If he if you want to testify that she wouldn't have been that one. But that's I think that's all that is in the context of this transcript. You read it differently. Well, but I think that that makes it almost. But to me, I think that makes it impossible to show causation. Not if the causation standard is substantial factor. Your questions presuppose the but for test. That's why Judge Bennett, I think, started with that question. But I think even with a but for. But I think even with a substantial factor, there are still it still has to be, I think, enlivened with some reasonable degree of medical certainty. And I don't think that. Yes, I think that's right. And so let me just play this. I think that's exactly right, because you gave us the case, which I appreciate it very much. You're right. There's not a lot of case law. A more staccato case versus save on drugs. This talks about admissibility. So they're experts are opining that the dosage, the increased dosage makes it more likely. I don't know if they're right about that. But why wouldn't that question get to go to the jury? Well, but I guess the question is, what is the standard? And I know this is something I will. You know, we haven't briefed in part because this whole substantial factor versus, you know, what is the proper standard hasn't been briefed. And, you know, I think maybe we all agree this has not, you know, this is not a model of clarity in the law. And I just throw this out there for your consideration. Is this something that should be certified to the Nevada Supreme Court? It was a pattern jury instruction. And it seems to me that the pattern jury instruction has this commentary that talks about the circumstances under which the 5.4.5 instruction is warranted. And I think your position is that one in a thousand patients would experience this so that overdose wasn't necessary for her. And that's the word used in the commentary. An overdose wasn't necessary in order for her to experience this consequence because one in a thousand people will. Right, but even with that, even with the commentary in the pattern jury instruction, I'm not sure it covers this situation where they would still have to show that something that was done here with the dosing had some sort of contribution to materially or at least in some medically significant way increase the risk, which I don't think that testimony does, especially with the way they are caveating it with the speculativeness and the sort of lack of ability to provide any sort of level of certainty. I mean, I think that's where the district court was struggling. Even if you take out the but-for analysis from it, there still has to be some level of medical, there still has to be some degree of medical certainty to all of this. Does that require some studies, some medical studies, some medical literature, as we used to call it? Well, I think under 702, and this gets into, you know, some Dalbert analysis of their experts, they have to rely on something. What was the basis of your Dalbert claims to the district court on their experts? Well, I think we're now getting, frankly, you know, very far afield. But wasn't your claim to the district court, I might have this wrong, was that their experience and training didn't qualify them to be an expert? Yes, I believe so. It wasn't that they didn't cite the right peer-reviewed studies, et cetera. It was that their degree, their training wasn't enough for them to even express an opinion in this field, right? Well, I guess what I'm getting at now is we are now moving into an area that, frankly, was not argued in the district court on legal issues that were not argued in the district court. So I think different arguments would have made on, if this had been the plaintiff's theory in the district court, there might have been different arguments made on the experts' analysis as well. But, counsel, I don't think we are presenting new arguments. This is why I said you seem to both have proceeded from assumptions about the correct standard and then talked right past each other. That's how I read this record. It doesn't seem like a new argument. In fact, it's the pattern instruction, so I don't know how it could be a new argument. But you do seem to have talked right past each other. It happens sometimes. I'm sort of new to all of this, actually even new in the appellate counsel coming in for the argument. But, yes, although I think that the way that the case was argued in the district court is different, I think, and I don't disagree that there was some talking past each other, but I do think that the notion of the but-for versus I don't think the substantial factor argument was articulated by the plaintiff. Can I ask a question? You mentioned that the case was argued a different way in the district court than it's being argued in here. That indicates to me that you may be relying on some sort of a forfeiture. And if you are relying on a forfeiture, will you tell me what the forfeiture was? Well, I think that the forfeiture would be that the I think to the extent that the plaintiffs are now relying on a sort of a substantial factor theory, that was not articulated. And I just as the argument was progressing to counsel before I got up here, I was rereading their opposition to some re-judgment in the experts' record, and I don't think they mentioned substantial factor in it. I think that's right. And they didn't mention the pattern jury instruction. Nor did your brief argue that the but-for test should be applied. It just applied it. And so it seemed to me that there's this overarching burden that the plaintiff has and that the whole argument was dropped down to a different issue, which is the admissibility of the expert report. Right. But this first step seems to have been skipped. Excuse me. So we follow your point. The plaintiff never argued in the court below that there was any evidence of substantial factor? Or that that is the proper test. And I think, you know, the district court obviously did not apply that test in granting the motion. So he never argued below substantial factor is reasonable probability? He argued only if substantial factor is reasonable certainty? Yes. Is that his point? Yes.  But regardless of what was argued below, the test, and, again, putting aside how settled it is, the test in Nevada, substantial factor but-for, the third restatement, it's purely a matter of law, correct? Presumably, yes. Anything further, Judge Bennett? No. Judge Bethea? No. Thank you very much. Thank you, counsel. We'll hear from opposing counsel. Mr. Moynihan, if I understood Mr. Rosen correctly, he's taking the position that in the court below, you argued only that there was evidence of substantial factor to a reasonable degree of medical certainty, and you never mentioned the lower and more plaintiff-friendly test of probability. Is he correct? You know, that may be a good question. I'd have to review the briefing to determine whether probability or certainty was used. But certainly the experts in their opinion or their reporting wrote certainty instead of probability. What Mr. Rosen was saying is that you're sort of blindsiding him here because below you argued that a reasonable degree of certainty was the correct standard and there was testimony as to that. And here you're arguing, no, all I've got to show is a reasonable degree of probability, but he says you didn't argue that below. So- And if you didn't argue that below, shouldn't we find that you forfeited? No, because really what we're looking at here is whether the court erred in the law and in application of the law. And on appeal, we argued both in the opening brief that the court applied the incorrect standard and again in the reply brief that the court used the incorrect standard, including citing to the jury instruction. Counsel, also, I'm looking at your expert reports. I'm looking at the DeSerbo report, ER 591. I conclude to a reasonable degree of medical probability that the action of dispensing was more likely than not the probable, the proximate causation factor. So at least it's in his expert report. It may be also in the Yaglinski one. But those were what everybody was fighting about, and he used probability. Yeah. Thank you for the correction. They may have said it both ways. In response to questioning a deposition, what the lawyer was applying was certainty. That was specific in the lawyer's questions. Yes. I agree with that. Anything further? Sure. I'd like to address one issue, and that's the suggestion or the suggested but not proven language in the black box warning. And what's interesting about that is that it applies to the reasons for why symptoms are suffered. One factor that is known is the age of the user or the patient, meaning that younger patients are more likely to suffer symptoms. There are two other factors that are suggested but not yet proven that cause an increase in the risk of suffering these symptoms, and that is exceeding the initial dose and escalating the recommended titration. And what's interesting about that is that is not applying a legal standard, because in order to actually prove that the injuries are caused by these two factors, you would have to knowingly and unethically overdose patients to get your precise numbers on whether these factors cause an increase in rash. And that's something that DiCerbo expanded on in his declaration. Because there's no testimony anywhere, am I correct, that suggests that there's any patient who should start with 300? That is no. It is precisely the opposite. No patient should start at 300. Right. No, that's what I'm saying. There's no evidence that suggests that there's any patient who should start with 300. Correct. And, in fact, that's specifically said in the literature, do not do that. Anything further? Doesn't look like there is. Thank you both for your advocacy. Thank you very much. It's a very important case. We'll take it under advisement and get you a decision as soon as we can.
judges: BEA, CHRISTEN, BENNETT